UNITED STATES of America ex rel. Chaja KASEL DE PAGLIERA, Petitioner,

v.

Joseph SAVORETTI, District Director, United States Immigration and Naturalization Service, District No. 6, Miami, Florida, Respondent.

UNITED STATES of America ex rel. Nicolae MALAXA, Petitioner,

v.

Joseph SAVORETTI, District Director, United States Immigration and Naturalization Service, Respondent.

Civ. Nos. 6705–M, 6728–M.

United States District Court
S. D. Florida, Miami Division.

Feb. 15, 1956.

David W. Walters, Miami, Fla., for petitioner, Chaja Kasel de Pagliera

David W. Walters, Miami, Fla., and Jack Wasserman, Washington, D. C., for petitioner, Nicolae Malaxa.

James L. Guilmartin, U. S. Atty., Miami, Fla., for the United States.

WILKIN, District Judge (by designation).

■ These two cases were presented by the same counsel. Although they are unrelated and arise from different facts, the Court considered them at the same time. The petition for writ of habeas corpus was granted in the Malaxa case, and in the Kasel case an order was made permitting the petitioner to file her "statement and accompanying information." The petitioner, Mrs. Kasel, had asked for a copy of her answers to the first examiner. She was entitled to such copy or an opportunity to make a copy. While awaiting such information, the five-day period allowed for filing "statement and accompanying information" expired. She should be given the copy at once and allowed three days to file her statement. Whether, after her statement and accompanying information are duly considered and the provisions of Section 1225(c) of Title 8 have been complied with, the petitioner has a right to judicial review seems doubtful and need not be decided at this time.

The controlling difference in the two cases lies in the fact that the petitioner, Malaxa,[1] is a resident of this country, while the petitioner, Mrs. Kasel, is not. The provisions of the Administrative Procedure Act, Title 5, U.S.C.A. § 1009, apply to Malaxa. But as to Mrs. Kasel it seems that "whatever the procedure authorized by Congress is, it is due process." The U. S. Court of Appeals for the District of Columbia Circuit has held that U. S. District Courts have jurisdiction to review exclusion proceedings, as well as deportation orders, but it did not define or discuss the scope of review, nor did its decision repeal the case of United States ex rel. Knauff v.

Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317; Estevez v. Brownell, D.C. Cir., 227 F.2d 38, and Wong Kay Suey v. Brownell, D.C.Cir., 227 F.2d 41.

It seems clear that Congress has made the Director of Immigration and the Attorney General the gatekeepers of our Nation. Congress has authorized them to close the gate against those who are not qualified to enter. If they act in accordance with the grant of authority, it has been held that no court can interfere with their action in behalf of an alien outside the gate. Knauff v. Shaughnessy, supra; Ex parte Wong So Wan, D.C., 82 F.Supp. 60; United States ex rel. Nicoloff v. Shaughnessy, D.C., 139 F.Supp. 465.

■ If, however, an alien gains lawful admission, then under the precedents established by the courts, he is entitled to the hospitality of our constitutional government, which means that he cannot be deported except by action that complies with the Administrative Procedure Act. Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. The provisions of the Administrative Act apply to persons within our borders even though aliens. But an alien not yet admitted to our country, it seems, can be excluded if the Director of Immigration and the Attorney General comply with Section 1225(c) of Title 8, U.S.C.A., even though such an alien has not been informed of the reasons for exclusion.

But a court of common law, informed as to the history and principles of Anglo-American jurisprudence, is always reluctant to support or countenance measures, judgments, or orders affecting human rights and liberty that do not comply with constitutional provisions regarding due process. Man's political evolution in countries enjoying Western civilization has gone beyond the practices of fiat government and "cloak and

1. Malaxa left the country after obtaining a reentry permit. While he was away the reentry permit was cancelled, but the United States District Court for the District of Columbia, on December 7, 1955, declared that the revocation of the petitioner's reentry permit was null and void.

dagger" diplomacy. Having learned the blessings of government by law, men are apprehensive of practices that belong to government by men. Whenever governmental agencies are permitted to operate in secrecy, capricious and arbitrary orders are likely to become prevalent. Administrative orders, based on secret information, should be indulged only when the reason for such orders is clear and impelling. The sunshine of publicity keeps government rational, lawful and just.

Orders based on secret information have become necessary because of world conditions beyond the control of this country. In time of war, hot or cold, the agencies of government must be alert, vigilant and wary. When our government is threatened by unscrupulous enemies, it is necessary for the agents of our government to take extreme precaution for the safety of our national interests. Congress has enacted laws which give to Immigration officers very wide authority regarding the entry of aliens into our country. They are empowered at times to take arbitrary action without disclosing to the public generally for the possible use of subversive agents the facts upon which their action is based. It is the duty of our courts to uphold such laws even though at times they seem to cause great hardship. The cause for such laws is to be found in world conditions, and the cause will not be removed until world order, based on law, is established.

While present world conditions exist and it is necessary to adopt unusual measures for our protection against unscrupulous enemies, we must be very careful not to lose the virtue of lawful government by adopting the tactics of the enemy. As with man, so with governments—their devotion to honest and forthright conduct places them at some disadvantage in a contest with unprincipled and treacherous opponents. That disadvantage must be endured if we are to preserve the blessings of our way of life. Those who "fight the Devil with fire" are in danger of being consumed by the flames. While we refuse to give to the enemy strategic information, we must be on guard against adopting the enemy's evil practices. We must not lose faith that in the long run truth and righteousness prevail. Good government holds the allegiance of its subjects and citizens, while secret and sinister government is undermined by its own iniquities. An honest government, like an honest man, can afford to be forthright.

"And the work of righteousness shall be peace; and the effect of righteousness quietness and assurance for ever." Isaiah, 32:17.

And history supports that prophesy.

Findings of Fact and
Conclusions of Law
Civ. No. 6705–M

The above matter having come on before the Court upon a writ of habeas corpus, and the Court having considered the pleadings and the arguments of counsel, makes the following findings of fact and conclusions of law:

Findings of Fact

1. Petitioner, an Argentine citizen, was issued a visa for the purpose of entering the United States temporarily as a visitor by the United States Consul at Buenos Aires, Argentina, and applied to respondent for admission as a visitor at the port of Miami, Florida, on January 8, 1956.

2. Respondent detained petitioner at the time of her application for entry and obliged her to answer formal written questions presented to her by an examiner of the United States Immigration Service, at which time she was not permitted to have counsel.

3. Petitioner was informed by respondent that she was temporarily excluded from the United States under the provisions of Section 235(c) of the Immigration Act of 1952, 8 U.S.C.A. § 1225(c), and was given written notice that she had a right to submit a written statement and accompanying information on her behalf within five days.

4. Petitioner was not informed as to the specific section of law under which she was alleged to be excludable, nor was she informed of the nature of the charges against her, in general terms or otherwise.

5. Petitioner's representative's request for a copy, or an opportunity to copy, petitioner's answers to the examiner's questions, so that a written statement and accompanying information could be submitted, was denied by respondent.

6. The five days allowed petitioner and her representative to submit written statements and accompanying information expired while awaiting information as to the specific section of law under which she was alleged to be excludable, general charges against her, and a copy of her written answers.

7. Respondent informed petitioner on January 20, 1956, that the Regional Commissioner had made her temporary exclusion permanent and that she was prohibited from applying for entry into the United States at any time.

8. That the decision of the Regional Commissioner to permanently exclude the petitioner was made without the benefit of written statement or accompanying information submitted by petitioner or her representative.

### Conclusions of Law

1. That this Court has jurisdiction of the instant proceeding instituted by application for a writ of habeas corpus.

2. That neither the petitioner nor her representative has had suitable opportunity to present written statements and accompanying information to the Regional Director of the United States Immigration Service pertaining to her excludability from entry into the United States.

3. That petitioner or her representative is entitled to have, pursuant to Section 1225(c) of Title 8 U.S.C., adequate and suitable opportunity to prepare and submit written statements and accom-

panying information on behalf of the petitioner.

4. Petitioner is entitled to issuance of a writ of habeas corpus as prayed for and to have writ of habeas corpus sustained, unless suitable opportunity for submission of a written statement and accompanying information is afforded and consideration given thereto by the Regional Commissioner.

Findings of Fact and
Conclusions of Law
Civ.No. 6728–M

The above matter having come on before the Court upon a writ of habeas corpus, and the Court having considered the pleadings and the arguments of counsel, makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Petitioner, a 71-year-old stateless native of Roumania, was issued an immigration visa for permanent residence on or about September 26, 1953, and was admitted to the United States for permanent residence by the Immigration and Naturalization Service at Rouses Point, New York.

2. Petitioner was admitted for permanent residence after the Attorney General had certified that his services were urgently needed in the United States, and that they would be beneficial to our national interests.

3. Petitioner was admitted to the United States for permanent residence after his case had been investigated and approved by the Department of State and the Department of Justice.

4. The petitioner applied for and received a reentry permit from agents of the Immigration and Naturalization Service, valid until December 17, 1955.

5. The petitioner proceeded with the aforesaid reentry permit to Argentina and on October 12, 1955, while he was in Argentina, the Immigration and Naturalization Service revoked the said reentry permit without a hearing. This revocation was declared null and void

by the United States District Court for the District of Columbia on December 7, 1955, and no appeal has been taken from such decision.

6. On December 16, 1955, the petitioner arrived at Miami, Florida, in possession of valid travel documents, including a valid reentry permit, which he presented to the immigration authorities.

7. Without notifying petitioner of any charges and without assigning any reasons, the respondent has refused to permit petitioner to reenter the United States and has confined him on parole, with limited exceptions, to the State of Florida. Petitioner has been denied permission to visit his family in New York or to conduct business activities there or to visit counsel in Washington, D. C. He has been denied permission to travel in the United States, except that he may be present in cities where his immigration case will be heard.

8. Respondent has not advised petitioner or the Court of the charges against petitioner, nor have any reasons been advanced as to why it is necessary to restrict petitioner's liberty of movement in the United States.

9. Petitioner's immigration hearing began on January 26, 1956, and it appears that considerable time will elapse before a final administrative decision is reached.

10. The restriction and interference with the petitioner's liberty pending final administrative decision in his case will cause him irreparable injury.

### Conclusions of Law

1. This Court has jurisdiction of the instant proceeding instituted by an application for a writ of habeas corpus.

2. The petitioner, as an alien returning to the United States with a valid reentry permit and as a permanent resident of the United States is entitled to notice of charges and a hearing before his liberty or residence here may be restricted or challenged.

3. The restriction of petitioner's liberty and his confinement to the State of Florida without notice of charges or a hearing and without assigning a basis therefor violates due process, is arbitrary, an abuse of discretion and illegal.

4. Petitioner is entitled to be discharged from his present confinement and the present restrictions upon his liberty.